# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN HOLLAND,

UNPUBLISHED
March 13, 2018

Plaintiff-Appellant,

v

No. 336808
Macomb Circuit Court

JAMES. D. KRAATZ,

LC No. 2016-003850-NZ

Defendant-Appellee.

Before: TALBOT, C.J., and BECKERING and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(7) (statute of limitations). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In February 2004, plaintiff contacted defendant, a financial advisor and registered securities agent, on behalf of her mother, Laurena Holland,[1] who wanted to invest $25,000 in life insurance proceeds that she had received after her husband's death. Defendant presented Laurena with a number of investment options, one of which was the Leaf Equity Appreciation Fund I, L.P. ("LEAF I"), an equipment leasing limited partnership. On July 10, 2004, Laurena purchased 250 units of LEAF I for $100 a unit. Laurena named plaintiff as a joint investor for estate planning purposes. In connection with the purchase, Laurena and plaintiff (collectively the "Hollands") executed a LEAF I subscription agreement that was signed and dated July 10, 2004. By signing the subscription agreement, the Hollands represented (1) that they received the prospectus; (2) that they understood that there was no public market for the units, that the transferability of the units was restricted, and that they could not expect to be able to readily liquidate their investment in the units; and (3) that they were financially qualified to invest. The Hollands also executed a "Review of Direct Participation Program Offering Document" through which they represented (1) that they received the offering document for LEAF I (the prospectus), (2) that they were aware of the suitability standards for the offering and that their financial situation met those standards, (3) that they were aware of the risk factors discussed on pages 9

---

[1] Laurena Holland is now deceased.

-1-

through 18 of the document and accepted the risks, and (4) that they relied on the information in the offering document in making the decision to purchase the security.

The Hollands began receiving monthly distributions from their purchase of the LEAF I units in July 2004. They received monthly distributions at an 8% annualized rate until June 2007, when the annualized rate increased to 10%. On March 9, 2009, LEAF Financial Corporation, the general partner of LEAF I, informed the Hollands by letter that as a result of the deterioration of global economic conditions and the "severe downturn in the economy," the distribution for LEAF I would be reduced to an annualized rate of 4%, effective with the distribution paid in May 2009 and that the distribution rate for LEAF I would be reviewed quarterly. The distribution rate was again reduced in September 2010, and in May 2012 the Hollands were notified that their monthly distributions from their investment in LEAF I were terminating in June 2012 and that the general partner would be liquidating the fund's remaining assets.

On August 13, 2014, the general partner informed the Hollands that the liquidation process had been completed and that the fund had been terminated. The letter stated that no proceeds were available for distribution to any of the limited partners or to the general partner after retiring the fund's debt and paying other expenses.

On October 27, 2016, plaintiff filed the present action. She generally alleged that defendant represented to the Hollands that "whatever happened, they would at least receive their principal investment back." She alleged in Count I that defendant negligently recommended an unsuitable investment and failed to adequately inform them about the risks associated with the LEAF I investment and the material features of the investment. She alleged in Count II that defendant intentionally and fraudulently misrepresented or omitted material facts with respect to the investment, and that they would not have invested in LEAF I but for defendant's fraudulent misrepresentations and omissions. In Count III, plaintiff alleged that defendant breached his fiduciary duties to the Hollands by recommending they invest in an unsuitable investment, by failing to adequately inform them of the risks associated with the LEAF I investment, and by misrepresenting the risks. In Count IV, plaintiff alleged that defendant violated MCL 451.2509(2) of the Michigan Uniform Securities Act (MUSA), MCL 451.2101 *et seq.*, by making intentional and fraudulent misrepresentations and by concealing material information. In Count V, plaintiff alleged that defendant violated MCL 451.2509(6) of MUSA by engaging in a course of business with plaintiff that operated as a fraud or deceit on plaintiff.

Defendant moved for summary disposition under MCR 2.116(C)(7) on the ground that plaintiff's claims were barred by the applicable statutes of limitation because his alleged misconduct occurred before the Hollands' July 10, 2004 purchase of LEAF I units and, therefore, plaintiff's claims accrued when they purchased units in the allegedly unsuitable fund. Defendant submitted documentary evidence that the Hollands received the written offering materials that related to LEAF I at the time of their investment, including the prospectus that disclosed all material terms and risks of LEAF I.

In response to defendant's motion, plaintiff argued she was first harmed and that her claims accrued when the LEAF I investment fund collapsed and caused the loss of the principal investment in August 2014. She also argued that defendant fraudulently concealed her claims,

thereby tolling the applicable limitation periods until August 2014 when she first discovered the "falsity" of defendant's representations regarding the LEAF I fund. Plaintiff provided her affidavit in which she averred that the Hollands did not receive the LEAF I prospectus before purchasing units in LEAF I, and that she therefore had no reason to know that an investment in LEAF I was an unsuitable investment or that defendant had made intentional and fraudulent representations and omissions regarding the LEAF I fund.

At a hearing on defendant's motion, the trial court found that the documentary evidence signed by Laurena showed that she was advised of the material terms of, and the risks associated with, an investment in LEAF I at the time of her investment. Therefore, she knew, or should have known, that defendant's purported oral representations regarding LEAF I were inconsistent with the written offering documents. The trial court found that plaintiff's claims accrued at the time plaintiff purchased units in LEAF I on July 10, 2004, and that the applicable limitation periods expired before plaintiff filed suit on October 27, 2016. Accordingly, the trial court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(7).

## II. STANDARD OF REVIEW

Pursuant to MCR 2.116(C)(7), a party may move to dismiss a claim on the grounds that the claim is barred by the statute of limitations. "The question whether a cause of action is barred by the applicable statute of limitations is one of law, which this Court reviews de novo. This Court also reviews de novo a trial court's decision regarding a summary disposition motion." *Seyburn, Kahn, Ginn, Bess, Eeitch & Serlin, PC v Bakshi*, 483 Mich 345, 354; 771 NW2d 411 (2009). In reviewing whether a motion under MCR 2.116(C)(7) was properly decided, this Court considers all documentary evidence and accepts the complaint as factually accurate unless affidavits or other appropriate documents specifically contradict it. *Kuznar v Raksha Corp*, 481 Mich 169, 175-176; 750 NW2d 121 (2008). "In the absence of disputed facts, we also review de novo whether a cause of action is barred by the applicable statute of limitations." *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007). An issue of statutory interpretation is also subject to review de novo. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006).

## III. ANALYSIS

Plaintiff does not dispute that the limitation period for her negligence and breach of fiduciary duty claims is three years, MCL 600.5805(10),[2] and that the limitation period for her

---

[2] MCL 600.5805(10) provides that "[e]xcept as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property." The limitation period for negligence claims is three years. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 222-223; 859 NW2d 723 (2014). The limitation period for a breach of fiduciary duty claim is three years. *Wayne Co Employees Ret Sys v Wayne Co*, 301 Mich App 1, 67 n 37; 836 NW2d 279 (2013), aff'd in part and vacated in part on other grounds 497 Mich 36 (2014).

fraud claim is six years, MCL 600.5813.[3]  She also does not dispute that her MUSA claims are governed by MCL 451.2509(10)(b), which provides that "[a] person may not obtain relief if an action is not commenced . . . within the earlier of 2 years after discovery of the facts constituting the violation or 5 years after the violation occurred."  She argues that the trial court erred by ruling that her claims accrued when the Hollands invested in LEAF I on July 10, 2004.

A statute of limitation is generally measured from the date a claim accrues.  *Frank v Linkner*, 500 Mich 133, 142; 894 NW2d 574 (2017).  Accrual is governed by statutory law.  *Id*. at 147.  MCL 600.5827 provides that a claim generally accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results."  The date of the "wrong" referred to in MCL 600.5827 is "the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which the defendant breached his duty."  *Moll v Abbott Laboratories*, 444 Mich 1, 12; 506 NW2d 816 (1993), citing *Connelly v Paul Ruddy's Equip Repair & Serv Co*, 388 Mich 146; 200 NW2d 70 (1972).  Therefore, in order to determine when plaintiff's claims accrued, we must determine the date on which plaintiff first incurred the harms that she alleges.  "The relevant 'harms' for that purpose are the actionable harms alleged in a plaintiff's cause of action."  *Frank*, 500 Mich at 150.

Plaintiff maintains that harm first occurred in August 2014 when she learned that her principal investment would not be distributed to her.  Plaintiff relies on this Court's decision in *Frank v Linkner*, 310 Mich App 169; 871 NW2d 363 (2015), aff'd in part and rev'd in part, 500 Mich 133 (2017), to argue that "this Court applied the accrual statute in an investment context and concluded that harm was suffered, not when the defendant breached its duties under the law, but when proceeds from the investment were distributed."  In *Frank*, a case involving a cause of action for member oppression within a limited liability company, the plaintiffs alleged that the defendants had wrongfully distributed the proceeds from the sale of ePrize, LLC (ePrize) and ePrize Holdings, LLC, the limited liability company in which the parties had varying interests. The operating agreement governing ePrize had been revised in March 2009 to prioritize the payment of company proceeds to those members who had acquired "Series C" membership units by loaning ePrize money in 2007 and 2008.  *Id*. at 173-174.  The plaintiffs had not been offered the opportunity to acquire Series C membership units and, as a result, received nothing when ePrize was sold for more than $100,000 in August 2012.  *Id*. at 175.  The plaintiffs' complaint included claims for breach of fiduciary duty, breach of contract, and member oppression in violation of MCL 450.4515, a provision of the Limited Liability Company Act, MCL 450.4101 *et seq*.  This Court held, in relevant part, that the three-year limitation period in MCL 450.4515(1)(e) was a statute of limitations and that the plaintiffs' claims were timely because they did not accrue until the plaintiffs suffered a calculable financial injury when ePrize was sold in August 2012.  *Id*. at 183, 189.

---

[3] MCL 600.5813 provides that "[a]ll other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."  The limitation period for fraud claims is six years.  *Boyle v Gen Motors Corp*, 468 Mich 226, 228 n 2; 661 NW2d 557 (2003).

-4-

Our Supreme Court disagreed with this Court's conclusion that the plaintiffs' claims did not accrue until they suffered a calculable injury. The Supreme Court held that the actionable harm for a member-oppression claim under MCL 450.4515 consists of actions taken by the managers that substantially interfere with the interests of the member as a member, and that this Court "erred by focusing on the availability of monetary damages, rather than on when plaintiffs incurred 'harm.' " *Frank*, 500 Mich at 153. The Court held that the alleged substantial interference with the plaintiffs' interests as members took place when their shares were subordinated in 2009 and that the subsequent liquidation of the company was only relevant to the extent the plaintiffs could recover money damages. *Id*. at 154-155. The Court concluded that the plaintiffs' claims accrued on March 1, 2009, and that the three-year limitations period in MCL 450.4515(1)(e) expired before the plaintiffs filed suit on April 9, 2013. *Id*. at 156. Thus, the plaintiffs' claims were barred unless they could show, under MCL 600.5855, that the defendants fraudulently concealed the existence of the claims or the identity of any person who was liable for the claims. *Id*.

In this case, each of the counts in plaintiff's complaint involves allegations that defendant failed to recommend a suitable investment based on Laurena's investment profile, that defendant failed to inform Laurena of the risks associated with the LEAF I investment and the material features of the investment, and that defendant intentionally or fraudulently made misrepresentations and material omissions regarding the LEAF I investment to induce Laurena to enter into an investment on terms she would not have accepted had the facts not been misrepresented or undisclosed. Actionable harm as a result of defendant's purported improper acts and omissions occurred when Laurena purchased units in LEAF I, and the claims accrued at that time. "Under MCL 600.5827, this is true regardless of the time when monetary damages result." *Frank*, 500 Mich at 153. Thus, even if plaintiff did not incur a calculable financial injury until 2014, her causes of action still accrued upon Laurena's purchase of an unsuitable investment procured by intentional or fraudulent misrepresentations and material omissions. Because plaintiff's claims accrued on July 10, 2004, the limitation periods expired before plaintiff filed suit on October 27, 2016. Accordingly, plaintiff's claims are barred.

Plaintiff contends, however, that she presented a question of fact with respect to whether the common-law discovery rule tolled her claim for breach of fiduciary duty, and that the trial court impermissibly resolved a question of fact in dismissing her claim. "A claim of breach of fiduciary duty . . . accrues when the beneficiary knew or should have known of the breach." *Meyer & Anna Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005) (quotation marks and citation omitted). In the discovery-rule context, a "plaintiff is deemed to be aware of a possible cause of action when he becomes aware of an injury and its possible cause." *Id*. at 48 (quotation marks and citation omitted). Plaintiff contends that the trial court erroneously dismissed the breach of fiduciary duty claim based on an impermissible finding of fact related to when the Hollands received the LEAF I prospectus[4] and thereby became aware of a possible cause of action.

---

[4] The LEAF prospectus provided notice of the nature of an investment in LEAF I and the risks of investing in the fund.

Plaintiff's claim for breach of fiduciary duty alleged that defendant breached his fiduciary duty to the Hollands by recommending an unsuitable "illiquid, high-risk investment," by failing to adequately inform them about the risks associated with the investment and misrepresenting the risks, and by failing to adequately inform them about, or misrepresenting the material features of, the LEAF I investment. In support of his motion for summary disposition, defendant submitted the Hollands' signed and dated signature page of the subscription agreement in which the Hollands represented, warranted, and covenanted that they had received the prospectus, that they understood that their investment was illiquid, and that they were financially qualified to invest. Page 1 of the prospectus stated:

> **This investment involves a high degree of risk. You should purchase these securities only if you can afford a complete loss of your investment**. You should read "Risk Factors," beginning on page 9 of this prospectus for a discussion of factors you should consider before buying our units.

In response to defendant's motion for summary disposition, plaintiff submitted her own affidavit in which she averred that defendant did not deliver the prospectus to her or to Laurena until after they had invested in the LEAF I fund.[5]

The trial court ruled that the documentary evidence established that Laurena warranted at the time of the investment that she had received and read the prospectus, which advised investors of the risks of investing, including the risk of loss of the principal investment, and that Laurena was therefore aware at the time she invested that defendant's alleged representations were inconsistent with the information that she had received regarding the LEAF I fund. The trial court also determined that, because Laurena was deceased, there was no way for plaintiff to refute the signed and dated document. Plaintiff submitted no documentary evidence to support the assertion in her affidavit that the prospectus was not provided to Laurena before her investment. Plaintiff's self-serving affidavit alone is not sufficient to create a genuine issue of fact where there is signed and dated documentary evidence that directly contradicts the averments in the affidavit. Therefore, we reject this claim of error.

Lastly, plaintiff argues that the applicable statutes of limitation were tolled by defendant's fraudulent concealment of her claims. She maintains that she could not have discovered the falsity of defendant's alleged misrepresentations regarding the LEAF I investment until she was informed in August 2014 that the $25,000 principal investment would not be returned to her.

The fraudulent concealment statute, MCL 600.5855, provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be

---

[5] Plaintiff's affidavit does not identify the date on which the prospectus was purportedly provided to them.

commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

To establish fraudulent concealment under MCL 600.5855 and toll a limitations period, a plaintiff must prove that the defendant engaged in affirmative acts or misrepresentations that were designed to prevent subsequent discovery; "[m]ere silence is insufficient." *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996).

Within the context of MCL 600.5855, a plaintiff is required to exercise reasonable diligence to discover facts pertinent to the existence of a cause of action. *Meyer & Anna Prentis Family Foundation, Inc*, 266 Mich App at 45 n 2. The statute was not intended to assist those who negligently refrain from making inquiries suggested by the facts. *Id*.

Plaintiff argued below that defendant's fraudulent concealment tolled the limitations period with respect to Count IV, in which plaintiff alleged that defendant violated MCL 451.2509(2)[6] of the MUSA by making intentional and fraudulent misrepresentations and by concealing material information, and with respect to Count V, in which plaintiff alleged that defendant violated MCL 451.2509(6)[7] of MUSA by engaging in a course of business with

---

[6] MCL 451.2509(2) provides:

A person is liable to the purchaser if the person sells a security in violation of section 301, or by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission, and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission.

[7] MCL 451.2509(6) provides:

A person that receives, directly or indirectly, any consideration for providing investment advice to another person and that employs a device, scheme, or artifice to defraud the other person or engages in an act, practice, or course of business that operates or would operate as a fraud or deceit on the other person is liable to the other person. The person defrauded may maintain an action to recover the consideration paid for the advice and the amount of any actual damages caused by the fraudulent conduct that gives rise to liability under this subsection, interest at 6% from the date of the fraudulent conduct, costs, and reasonable attorney fees determined by the court, less the amount of any income received as a result of the fraudulent conduct. This subsection does not apply to a broker-dealer or its agents if the investment advice provided is solely incidental to transacting business as a broker-dealer and no special compensation is received for the investment advice.

plaintiff that operated as a fraud or deceit on plaintiff. MCL 451.2509(10)(b) provides that a person may not obtain relief under subsection (2), or under subsection (3) or (6), "unless the action is commenced within the earlier of 2 years after discovery of the facts constituting the violation or 5 years after the violation occurred." Plaintiff argued that the MUSA claims were tolled under the fraudulent concealment statute.

The portion of MCL 451.2509(10)(b) pertaining to claims under subsections (2) and (6) is both a statute of limitation and a statute of repose. The language requiring a party to bring an action within two years after discovery of the facts constituting the violation is a statute of limitation, whereas the language requiring a party to bring an action within five years after the violation occurred is a statute of repose because it contains an express period for filing an action. See *Sills*, 220 Mich App at 308. The statute requires a party to bring an action within the earlier of the limitations period or the period of repose. The fraudulent concealment statute will not operate to toll a statute of repose. *Baks v Moroun*, 227 Mich App 472, 486; 576 NW2d 413 (1998), overruled in part on other grounds by *Estes v Idea Engineering & Fabricating, Inc*, 250 Mich App 270; 649 NW2d 84 (2002). Therefore, even assuming that plaintiff could establish that defendant engaged in fraudulent concealment that tolled the limitations period in MCL 451.2509(10)(b), the statute of repose operates to bar plaintiff's causes of action because the claims were not filed within five years of the alleged violations.

Plaintiff also suggested below that her fraudulent concealment argument applied to Counts I through III "to the extent necessary." On appeal, plaintiff simply asserts that she and her mother "discovered the falsity of Appellee's fraudulent misrepresentations regarding the LEAF investment by way of the August 13, 2014 letter they received from the LEAF management team." She does not identify defendant's affirmative acts or representations that prevented discovery of the claims. Nonetheless, as previously discussed, the submitted documentary evidence revealed that Laurena reasonably would have discovered the existence of her claims because the LEAF I prospectus and offering documents conflicted with the oral representations allegedly made by defendant with respect to the LEAF I fund. MCL 600.5855 is not available to plaintiff to save her time-barred claims.

Affirmed.


/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Thomas C. Cameron